# CIRCUIT COURT OF THE CITY OF ROANOKE

Commonwealth of Virginia

v.

Jerry Lewis Orange

March 18, 1993

Case No. CR93–13

BY JUDGE JACK B. COULTER

This is a novel case grounded on technicalities by which a defendant, clearly operating a motor vehicle during the period that the law forbade him to do so, was defying the sanctions that society had placed on him. By his prior conduct and record, he had demonstrated such a callous and irresponsible lack of respect for the safety and welfare of others that he had forfeited the privilege of driving. The consequences of such demonstrated indifference had been forcefully brought to his personal attention by the solemn Order of a Court of record. Clothed with all the majesty of the law, a judge in open Court had ordered, adjudged, and decreed Jerry Lewis Orange to be an habitual offender and commanded: "[thou] shall not operate a motor vehicle on the highways of the Commonwealth of Virginia . . . ."

In the teeth of that command, Orange willfully and intentionally on September 18, 1992, assumed the risk of defying that Order. With such mechanical ineptitude as to draw the attention of an officer of the law and without any color of license, he was caught in violation of that directive.

For such conduct and attitude, through the resourcefulness of his counsel, he seeks the mercy of the Court whose Order he has openly defied.

## The Issue at Bar

But we are here on technicalities, the sacred theme of our laws, and, though anathema at times to that great body of our citizenry who

respect those laws, we must give objective judgment to the precise issues at bar.

Was the Order of the Honorable Raymond Cundiff, Judge of the Circuit Court of Bedford County, entered on July 24, 1984, valid and enforceable? Was it so deficient in scope and detail as to constitute a nullity? Was it so bereft of substance as to be absolutely meaningless?

### The Conflicting Contentions Stated

The defendant by his dedicated counsel argues that Judge Cundiff's Order is defective because it revokes the privilege to drive indefinitely, without limit in time. Further, it is urged that without notice of the penalty for violation, Jerry Orange's right to due process has been violated. Relying principally on *Davis v. Commonwealth*, 12 Va. App. 246, 402 S.E.2d 711 (1991), the defendant earnestly contends that the language of both the relevant statutes in effect on July 24, 1984, (§§ 46.1–387.8 and 46.1–387.7) should have been expressly incorporated into the Court Order which declares one an habitual offender; that without limiting the period of revocation, the Order is indefinite and presumably perpetual. Such result and omission the defendant argues is contrary to the specific language of § 46.1–387.7, the results contemplated by the legislature, and the rationale of the *Davis* decision; and further that, without notice as to the penalty for violation, the Order impinges unconstitutionally on Orange's rights of due process.

The Commonwealth in rebuttal argues with equal intensity that the *Davis* case is distinguishable from the case at bar because Davis had been arrested fourteen years after he had been adjudicated an habitual offender. Therefore, Davis was eligible to be reinstated, whereas Orange had chosen to drive within the prohibited ten-year period of suspension. Furthermore, the Code clearly, unequivocally, and emphatically prohibits one who has been declared an habitual offender from driving within the ten-year period and until his license has been officially restored. In addition, the proceedings of habitual offender adjudication are civil in nature and therefore presumably not entitled to the strict construction of interpretation that characterizes criminal statutes. Though not actually stated, the Commonwealth also implies that one is presumed to know the law and that if ambiguities or doubts existed in the mind of Orange as to the precise meaning, limitations, responsibilities, or consequences of violating that Court Order, the burden was on him to seek clarification or interpretation. After all, one

who has demonstrated such disregard for the rights and safety of others should not be relieved of all personal responsibilities to undertake himself to learn or understand the meaning of so drastic and solemn an order as that given to him by Judge Cundiff.

### The Decision and Its Rationale

The lines of contest, therefore, having been drawn and ably argued, their resolution is now in order. First of all, though the habitual offender proceedings may be civil in nature, the holding in *Davis* pointedly suggests otherwise. The indictments generated by alleged violation of § 46.1–387.8 are clearly criminal in application; conviction spawns punishment of at least one year of unsuspendible incarceration. As all penal statutes, therefore, they must be strictly construed. Secondly, though *Davis* is significantly distinguishable from the instant case, the principles for which it stands require that the Order of Adjudication upon which the felony is founded should include the "provision that the revocation would remain in force until the privilege [is] restored." The felony for which Orange stands indicted is codified in § 46.2–357 (formerly § 46.1–387.8), as his indictment so states. That statute, or its predecessor in effect at the time of the adjudication, defines the felony that the Commonwealth must prove has been committed. That definition includes and included the limitation that that which would be unlawful would be so "while the Order of the Court prohibiting such operation remain in effect"; that by reference to the proceeding section (§ 46.1–387.7), such prohibition would last for a period of ten years and until the privilege had been restored by an Order of a Court of record; that the definition of the felony at issue also included the notice and warning that violation of the Order of suspension would be punishable by incarceration of at least one year or twelve months "no portion of [which] shall be suspended"; and that these specific requirements and language have been used by this Court in its habitual offender adjudications for a number of years. (See also the recommended form order appearing as Appendix C and D, under XIV, Virginia Habitual Offender Act, Commonwealth Attorney's Handbook.)

Subject to the strictness of scrutiny, therefore, it is the judgment of this Court that the Order adjudicating Jerry Orange an habitual offender was impermissibly vague and uncertain, failed to include all relevant portions of how long the suspension would last and the re-

quirements necessary to be relieved from it, and neglected to advise the person whose license was being taken of the dire consequences of unsuspendible imprisonment if he should be caught driving during a period of undefined duration, irrespective of accident or traffic infraction.

Sustaining technicalities to benefit one who has demonstrated such disrespect for the law and such unconcern for the rights of others is a distasteful conclusion. The majesty of the law and the precedents that give it life and meaning, however, require that before one is convicted of a crime that leads to certain and unrelievable incarceration, that crime must stand clearly defined with the consequences of its breach thoroughly understood and understandable.

A person of even average intelligence, and half of our citizenry by definition would fall below that standard, would have difficulty in understanding the limits of the subject Order of Adjudication and what might happen if it were disregarded. In the criminal arena, one should not have to guess at the full meaning and implication of an Order of vague and ambiguous content or one of incomplete and inadequate detail.

Although unhappy with the individual result and the undeserved windfall, but satisfied that overriding principles have been sustained, the motion to dismiss is granted. But the Order of dismissal shall include all the necessary elements adjudicating one an habitual offender dating back, of course, to July 24, 1984, so that the defendant is fully and fairly aware of the details and parameters of his adjudication that he cannot drive until July 23, 1994, and until his privilege to drive has been duly restored. The consequences of his violation should also be expressly set forth.